```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x     NOT FOR PUBLICATION
                                                                :
In re:                                                          :
                                                                :     Case No.: 11-12646 (MG)
            EB CAPITAL MANAGEMENT LLC,                          :
                                                                :     Chapter 11
                                              Debtor.           :
----------------------------------------------------------------x
```

**MEMORANDUM OPINION AND ORDER GRANTING UNITED STATES TRUSTEE'S MOTION TO TRANSFER CHAPTER 11 CASE TO THE BANKRUPTCY COURT FOR THE DISTRICT OF SOUTH DAKOTA PURSUANT TO 28 U.S.C. § 1412**

*A P P E A R A N C E S*:

TRACY HOPE DAVIS
*United States Trustee for Region 2*
22 Whitehall Street, 21st Floor
New York, New York 10004
By:   Susan Golden, Esq.


LAW OFFICE OF ROBERT A. MAHLER, ESQ.
*Attorney for the Debtor*
419 East 64th Street, Suite 2C
New York, New York 10065
By:   Robert Mahler, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

      Pending before the Court is the *Motion of the United States Trustee, Pursuant to 28 U.S.C. 1412, to Transfer This Chapter 11 Case to the Bankruptcy Court for the District of South Dakota* (the "Motion"). (ECF Doc. # 10.) In support of the Motion, the United States Trustee (the "Trustee") points to the lack of connection between the debtor, EB Capital Management LLC ("the Debtor"), and this district. The Trustee asserts that this case should be transferred to the District of South Dakota in the "interest of justice" and for the "convenience of the parties."

1

*See* 28 U.S.C. § 1412.  The second amended petition lists the Debtor's street address as 110 Wall Street, 11th Floor, New York, NY 10005.  However, the second amended petition and the Debtor's schedules and statement of financial affairs also indicate that the location of principal assets of the Debtor, the shareholders of the Debtor and the majority of the Debtor's creditors are located in Sioux Falls, South Dakota.

A rambling objection to the Motion, in the form of an "Affidavit" submitted by a member of the Debtor, Ronald Goldberg,[1] was filed by the Debtor in response to the Motion (the "Objection").[2]  The Debtor submits, in substance, that venue lies in this district because the Debtor has conducted business in the city and state of New York for over twenty years at 110 Wall Street.  (Objection ¶ 2.)  The Debtor further asserts that Mr. Goldberg's address,[3] as well as the business address of the Debtor, has always been 110 Wall Street and the only reason for his visiting Sioux Falls, South Dakota was to oversee the construction and improvement of a house in Sioux Falls and to visit his 18-month old son who resided at the Sioux Falls house with his estranged wife, Kyriel Treloar, until Ms. Treloar and the child were recently evicted.  (*Id.*)

In further opposition to the Motion, the Debtor states that the "more important" reason that the Court should deny the Motion is because transfer to South Dakota would work severe prejudice on the Debtor because the only bankruptcy judge in South Dakota is a "golfing buddy" of Kent Cutler, Esq., attorney for Dennis and Susan Yungwirth (the "Yungwirths").  (*Id.* ¶ 3.)

---

[1]     The same Ronald Goldberg filed an individual chapter 13 in this district, which petition was assigned to this Court on April 23, 2009, Case No. 09-12497 (MG).  The chapter 13 case was dismissed for failure to timely file required documents.  (Case No. 09-12497, ECF Doc. # 13.)

[2]     Weighing against Mr. Goldberg's credibility is the fact that he is a convicted felon.  Mr. Goldberg has been convicted for crimes in at least three different federal criminal cases in Florida, Pennsylvania and New York, including convictions for interstate transportation of stolen securities, devising a scheme to defraud a federally insured financial institution, making false statements on an application for a bank loan, possession of stolen securities, attempted escape from a correctional center, forging the signature of a United States Magistrate Judge and wire fraud.  *See United States v. Goldberg*, No. 06-4076, 2007 WL 1211638, at *1–2 (3d Cir. Apr. 25, 2007).

[3]     During the hearing on the Motion, the Debtor's counsel said that Mr. Goldberg is currently living in a hotel in Minnesota.

The Yungwirths are owners of the house in Sioux Falls that is the subject of two purchase agreements allegedly executed in favor of Mr. Goldberg and which the Debtor has moved to assume in this bankruptcy case.[4] (*Id.*) Mr. Goldberg further asserts that he has "spoken to just about every bankruptcy counsel in South Dakota" and has been unable to secure counsel for his personal bankruptcy case (discussed below) or agree to act as local counsel for the Debtor in this case. (*Id.* ¶ 4.) Mr. Goldberg argues that the South Dakota bankruptcy court should not handle the Debtor's bankruptcy filing because it refused to enforce the automatic stay in his personal bankruptcy case in South Dakota and entered a filing injunction against the Debtor for a period of one year. (*Id.* ¶ 5.)

For the following reasons, even if venue lies in this district by virtue of the Debtor's address at 110 Wall Street, the Court concludes that this case should be transferred to the District of South Dakota.

## I. BACKGROUND

The Debtor filed a petition for relief under chapter 11 on May 31, 2011. (ECF Doc. # 1.) The Debtor filed an amended petition for relief under chapter 11 on June 1, 2011. (ECF Doc. #2.) The Debtor filed a further amended petition for relief under chapter 11 on June 22, 2011 (the "Second Amended Petition"). (ECF Doc. # 12.) The Debtor has identified itself as a small business debtor as defined in 11 U.S.C. § 101(51D).

In the Second Amended Petition, the Debtor listed its street address as "110 Wall Street, 11th Floor, New York, NY, 10005" and its principal assets of business debtor as "26907 Baker Park Place, Sioux Falls, SD, 57108." The Second Amended Petition also lists the "Landlord"

---

[4] Mr. Goldberg purports to have made approximately $600,000 in improvements in the Sioux Falls property in anticipation of the purchase. (*Id.*) The Yungwirth's have filed affidavits refuting Mr. Goldberg's assertions. (ECF Doc. #s 18–21.)

3

who "has a judgment against the debtor for possession of debtor's residence" as "Dennis and Susan Yungwirth, 47070 104 Street, #300, Sioux Falls, SD 57108."

On June 14, 2011, the Debtor filed its bankruptcy schedules and statement of financial affairs. (ECF Doc. #s 5, 6.) Schedule A lists the Debtor's ownership of a "contract to purchase" the property located at "26907 Baker Park Pl. in Sioux Falls, South Dakota" in the amount of $600,000. Schedule D lists GNR Construction of Sioux Falls, South Dakota as the Debtor's only secured creditor, with a mechanics lien in the amount of $511,767.15. Schedule F lists six unsecured creditors with claims totaling $70,419.14, with three located in South Dakota and the other three located in Arizona, Illinois and Delaware. The largest unsecured creditor, Northern Rental Corp., is located in Sioux Falls, South Dakota. The Yungwirths, who successfully obtained a judgment against the Debtor (and the Debtor's principal) in a case entitled *Dennis and Susan Yungwirth v. Ronald Goldberg, EB Capital Management, LLC, Kyriel Treloar, et al.*, Index No. 11-201, in the South Dakota, Circuit Court, Second Judicial Circuit of the Court of Lincoln, giving the Yungwirth's possession of the Sioux Falls house due to rent due and owing, also have addresses in Sioux Falls. Schedule G lists executory contracts and unexpired leases with the Yungwirths for the home located in Sioux Falls and a contract of sale to purchase the property located in Sioux Falls. Finally, the co-debtors listed in Schedule H, Kyriel Treloar and Ronald Goldberg, both reside in Sioux Falls.[5]

Mr. Goldberg filed a personal bankruptcy case in the Bankruptcy Court for the District of South Dakota in May 2011 on the eve of a state court eviction hearing.[6] The United States

---

[5] Mr. Goldberg indicated on Schedule H of the Second Amended Petition that he resides in Sioux Falls, South Dakota. This statement is in direct conflict with the Debtor's statement in the Objection that his "permanent residence . . . has always been in New York County, New York." (Objection ¶ 2.)

[6] Mr. Goldberg has a history of filing bankruptcy petitions in jurisdictions all over the country including in this district, *see supra* note 1. Documents filed in this Court in response to what appears to be a motion to assume the purchase contracts between the Debtor and the Yungwirths, ECF Doc. #s 14–15, indicates that Mr. Goldberg

4

Trustee in South Dakota moved to dismiss the personal bankruptcy case due to the debtor's failure to file schedules and statements. The Bankruptcy Court for the District of South Dakota granted the motion to dismiss and barred Mr. Goldberg or "his LLC," EB Capital Management LLC, from refiling for one year.[7] Also in May 2011, the state court in South Dakota concluded that the automatic stay did not apply to an eviction proceeding instituted against Mr. Goldberg because a different entity, EB Capital Management LLC, was the lessee of the property and not subject to the automatic stay.

## II.    DISCUSSION

### A.    Proper Venue under 28 U.S.C. §1408

28 U.S.C. §1408 states that a chapter 11 case may be commenced in the district court for the district in which "the domicile, residence, principal place of business in the United States, or principal assets in the United States . . . have been located for a hundred and eighty days immediately preceding such commencement . . . ." The statute is written in the disjunctive making venue proper in any of the listed locations. *In re Segno Commc'ns, Inc.*, 264 B.R. 501, 505 (Bankr. N.D. Ill. 2001) (finding any of the four is jurisdictionally sufficient). A corporation's domicile is generally held to be its state of incorporation. *In re B.L. of Miami, Inc.*, 294 B.R. 325, 328 (Bankr. D. Nev. 2003) (finding venue in Nevada proper because it was the state of incorporation); 1 COLLIER ON BANKRUPTCY ¶ 4.01[2][b] (16th ed. rev. 2011). In this case, the Debtor, an LLC, lists its street address as "110 Wall Street, 11th Floor, New York, New

---

filed a case under chapter 13 in September 2009 in the Southern District of Florida, Case No. 09-29421, which was subsequently dismissed with a 180-day bar to refiling. Also in March 2009, Mr. Goldberg filed a case under chapter 11 for another business, Alliance Capital LLC, in the Southern District of Florida, Case No. 09-15680, a case which was dismissed for failure to file schedules and statements or appear at meetings of creditors.

[7]     Upon transfer of this case, the bankruptcy court in South Dakota may have to determine whether the Debtor violated the filing injunction issued in connection with the dismissal of Goldberg's chapter 13 case in that district.

York 10005." The Debtor also asserts that its principal place of business is in New York and attaches a "Confidentiality and Nondisclosure Agreement" for the "aim of exploring Facebook Stock and other business objectives" and a "Business Consulting and Advisory Agreement" with "Re3 USA, LLC" as proof of such business activities in New York. (Objection, Exs. A, B.)

Notwithstanding the questionable evidence adduced by the Debtor that it "resides" at 110 Wall Street or that its principal place of business is in New York, venue may properly lie in this district. Nevertheless, transfer of venue is appropriate in this case given the strong connection with South Dakota.

### B.    Change of Venue Pursuant to § 1412

Finding venue proper under section 1408, consideration of the transfer venue motion must then turn to the discretionary power granted courts pursuant to 28 U.S.C. § 1412. After a case or proceeding has commenced in a proper district, it can be transferred to another district if the court finds the transfer would be in the interest of justice or for the convenience of parties. 28 U.S.C. § 1412; *In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008). Section 1412 is worded in the disjunctive allowing a case to be transferred under *either* the interest of justice rationale or the convenience of parties rationale. *Enron Corp. v. Arora (In re Enron Corp.)*, 317 B.R. 629, 637 (Bankr. S.D.N.Y. 2004). The decision to transfer venue is within the discretion of the court, as evidenced by the use of the permissive "may" in section 1412. *Id.* at 638 n.8. A court should base its analysis on the facts underlying each particular case. *See id.* at 638; *Gulf States Exploration Co. v. Manville Forest Prod. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990) (*"Manville"*) (stating that review should be on individualized basis). However, "the power to transfer a case [or proceeding] should be exercised cautiously." *In re Enron Corp.*, 317 B.R. at 638 (citing *In re Toxic Control*

6

*Techns., Inc.*, 84 B.R. 140, 143 (Bankr. N.D. Ind. 1988)). A debtor's selection of a proper venue is "entitled to great weight" in the consideration of change of venue motions. *In re Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002). As a result, "a heavy burden of proof rests on the moving party to demonstrate that the balance of convenience clearly weighs in his favor." *Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc. (In re Lionel Corp.)*, 24 B.R. 141, 142 (Bankr. S.D.N.Y. 1982) (deciding motion to transfer an adversary proceeding from the district in which the main bankruptcy case was filed). "The party moving for change of venue bears the burden of proof and that burden must be carried by a preponderance of the evidence." *Manville*, 896 F.2d at 1390 (affirming bankruptcy court's refusal to transfer an adversary proceeding); *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co., Inc. (Matter of Commonwealth Oil Refining Co., Inc.)*, 596 F.2d 1239, 1241 (5th Cir. 1979) (*"CORCO"*).

In *Manville*, the Second Circuit considered the benefits of the current court's familiarity with the case and facts and the lag time of the receiving court's learning curve. *In re Enron Corp.*, 274 B.R. at 349–50 (citing *Manville*, 896 F.2d at 1391). There, the moving party sought to transfer the venue of an adversary proceeding involving Louisiana law from New York, the district handling the main bankruptcy case, to Louisiana. *Manville*, 896 F.2d at 1387–88. The bankruptcy court that originally denied the motion found that while the convenience of the parties and witnesses favored transferring venue, the economic and efficient administration of the case weighed in favor of retaining venue of the adversary proceeding. The court held that it was inappropriate to shift the burden of the case to another court because the bankruptcy court had already developed a substantial learning curve. *Id.* at 1391. The court also found the change of venue motion untimely. *Id.* On appeal, the Second Circuit held that the lower court had

7

struck the appropriate balance between the economic and efficient administration of the case and the convenience of the parties. *Id.*

The interest of justice prong has been characterized as a broad and flexible standard. *In re Enron Corp.*, 274 B.R. at 343 (citing *Manville*, 896 F.2d at 1391). The court considers whether (i) transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) the interests of judicial economy would be served by the transfer; (iii) the parties would be able to receive a fair trial in each of the possible venues; (iv) either forum has an interest in having the controversy decided within its borders; (v) the enforceability of any judgment would be affected by the transfer; and (vi) the plaintiff's original choice of forum should be disturbed. *In re Dunmore Homes, Inc.*, 380 B.R. at 672. Courts also consider the impact of the learning curve if the case is transferred. *In re Enron Corp.*, 274 B.R. at 349. In addition, courts consider the ability of interested parties to participate in the proceedings and the additional costs that might be incurred to do so. *In re B.L. of Miami*, 294 B.R. at 334.

The convenience of parties prong has six factors: (i) proximity of creditors of every kind to the court; (ii) proximity of the debtor; (iii) proximity of witnesses necessary to the administration of the estate; (iv) location of the assets; (v) economic administration of the estate; and (vi) necessity for ancillary administration if liquidation should result. *In re Dunmore Homes, Inc.*, 380 B.R. at 676 (citing *In re B.L. of Miami*, 294 B.R. at 329).

    **C.**    **Analysis of Change of Venue Factors**

Under both prongs of the analysis, the Trustee's motion is well-taken. As to the "interest of justice" prong, transfer of the case to South Dakota would "promote the economic and efficient administration of the bankruptcy estate" because four of the seven creditors in the case, including the secured creditor and the Yungwirths–who obtained and executed a warrant of

8

eviction against Mr. Goldberg–are all located in South Dakota. The Second Amended Petition lists "26907 Baker Park Place, Sioux Falls, SD" as the "location of principal assets of business debtor" and other estate assets, including a lease deposit with the Yungwirths, the fully furnished house and other artwork are located in South Dakota. It would be far more cost effective for interested parties to participate in the bankruptcy proceedings if the case were transferred to South Dakota. *In re B.L. of Miami*, 294 B.R. at 334. Mr. Goldberg's history with filing bankruptcy cases all over the country further convinces the Court that the proper forum for this Debtor is the location of the assets and creditors—the Debtor, through Mr. Goldberg, should not be able to "forum shop" this case in the hopes of getting a more favorable ruling with regard to the applicability of the automatic stay or whether the purchase contracts can be assumed. Finally, there has been no "learning curve" in this case because this is the first motion pending before the Court and no other issues have arisen that required the Court's attention. *Manville*, 896 F.2d at 1391.

The Court will not give credence to the suggestion that the Debtor would not receive a "fair trial" because a previous bankruptcy filing by Mr. Goldberg in South Dakota was dismissed for failure to file schedules or because the sole bankruptcy judge in South Dakota, Judge Charles L. Nail, Jr., is allegedly a "golfing buddy" of counsel to the Yungwirths.[8] This Court has no reason to question Judge Nail's decision and concludes that a bankruptcy judge in South Dakota is in a far better position to hear this matter than this Court given the location of Mr. Goldberg's previous filing and the Debtor's assets and creditors.

---

[8] Kent Cutler, Esq., the Yungwirth's counsel in South Dakota, filed an affidavit in this case refuting many of the Debtor's contentions regarding the relationship between Mr. Cutler and Judge Nail. (ECF Doc. # 21.) Mr. Cutler stated that he has never golfed with Judge Nail nor has he ever appeared before Judge Nail, though he did invite Judge Nail to speak in front of his Rotary group several years ago "regarding changes to the bankruptcy code." (*Id.* ¶ 5.)

For the same reasons, the Court concludes that the "convenience of the parties" is better served by a transfer to the District of South Dakota. On balance, it is more convenient—for hearings, filings or otherwise—for the case to be transferred to the District of South Dakota based on the location of the Debtor's assets and major parties in interest.

### III. CONCLUSION

Accordingly, having considered the "interests of justice" and "convenience of the parties" factors, the Court finds that the Trustee has satisfied her burden by a preponderance of the evidence of showing that the transfer of the Debtor's bankruptcy case is warranted. For the reasons stated, the Motion is granted and the clerk of the court is directed to transfer the case to the United States Bankruptcy Court for the District of South Dakota.

**IT IS SO ORDERED.**

DATED:	July 14, 2011
	New York, New York

	_____/s/Martin Glenn_____
	MARTIN GLENN
	United States Bankruptcy Judge